**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**


JASON PATILLO,

      Petitioner,

v.                            Civil Action No. 3:12CV261

HAROLD W. CLARKE,

      Respondent.


## MEMORANDUM OPINION

Petitioner, Jason Patillo ("Patillo"), a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition"). Patillo challenges his convictions in the Circuit Court of the City of Richmond ("Circuit Court") for first degree murder and use of a firearm in the commission of that offense.

Patillo asserts entitlement to relief upon the following grounds:[1]

Claim 1    Insufficient evidence supported Patillo's convictions.

Claim 2    Patillo received ineffective assistance when counsel failed to call Christy Patillo, Annie Patillo, Kelly Edwards, Brenda Liamore, Jermaine Washington, and Katrina McCray to support Patillo's alibi defense.

---

[1] Patillo's claims are found in the Memorandum in Support of the § 2254 Petition (ECF No. 1-1). (Mem. Supp. § 2254 2-11.)

Claim 3     Patillo received ineffective assistance when counsel failed to call LaShelle Harrison, who would have impeached the testimony of the prosecution's chief witness, Kimberly Patillo.

Claim 4     In his argument and commentary to the jury, the prosecutor improperly shifted the burden of proof to the defense.

Claim 5     Counsel failed to object to the improper argument identified in Claim 4.

Claim 6     Counsel failed to vigorously cross-examine Kimberly Patillo.

Claim 7     Counsel failed to make a pre-trial motion to quash the Indictment for lack of probable cause.

Claim 8     During closing argument, the prosecution misrepresented the evidence presented at trial.

In addition to the foregoing claims, Patillo lists a series of alleged errors by the Circuit Court in reviewing the Petition for a Writ of Habeas Corpus that he filed with that Court. (Mem. Supp. § 2254 Pet. 1-2.)[2] As explained below, those alleged errors fail to provide a basis for federal habeas relief.

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for

---

[2] The list consists of a restatement of the Assignment of Errors contained in Patillo's Petition for Appeal filed with the Supreme Court of Virginia in conjunction with Patillo's state habeas appeal. Petition for Appeal at 3-4, Patillo v. Clarke, No. 111786 (Va. filed Oct. 11, 2011).

federal habeas corpus relief." <u>Bryant v. Maryland</u>, 848 F.2d 492, 493 (4th Cir. 1988) (citations omitted). This is so because the habeas petitioner's detention results from the underlying state conviction, not the state collateral proceeding. <u>Lawrence v. Branker</u>, 517 F.3d 700, 717 (4th Cir. 2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error relating to those post-conviction proceedings represents an attack on a proceeding collateral to detention and not to the detention itself." (citing <u>Bryant</u>, 848 F.2d at 493; <u>Bell-Bey v. Roper</u>, 499 F.3d 752, 756 (8th Cir. 2007); <u>United States v. Dago</u>, 441 F.3d 1238, 1248 (10th Cir. 2006))). Accordingly, these alleged errors will receive no further consideration.

Clarke has moved to dismiss Claims 1 through 8 as procedurally defaulted and lacking in merit. Specifically, he contends that Patillo procedurally defaulted Claim 1, 4, and 8 by failing to raise them on direct appeal. He asserts that Patillo procedurally defaulted Claims 2, 3, 5, 6, and 7 when he failed to properly raise those claims in his collateral appeal to the Supreme Court of Virginia and that, in any event, they

lack merit. Patillo has responded.[3] For the reasons set forth below, the Court finds that Claims 1, 4, and 8 defaulted and that the remaining claims lack merit.

## I. **PROCEDURAL HISTORY**

### A. **Direct Appeal**

Following his convictions in the Circuit Court, Patillo pursued an appeal to the Court of Appeals of Virginia and the Supreme Court of Virginia. In his Petition for Appeal to the Supreme Court of Virginia, Patillo raised the following Assignments of Error:

I. The trial court erred in failing to instruct the jury that "[t]he failure of the evidence to disclose any other criminal agent than the defendant is not a circumstance that may be considered by the jury in determining whether or not he is guilty of the crime with which he is charged."

II. The Court of Appeals erred in ruling that the contemporaneous objection ruled [sic] barred consideration on appeal of the refused jury instruction as presented in Assignment of Error I, and ruling that, even if not barred, the trial court did not abuse its discretion in failing to grant the instruction[.]

III. The trial court erred in failing to grant a mistrial when the Commonwealth asked a defense witness if the defense attorney instructed the witness to wear a multi-colored coat to court.

---

[3] The Court has considered Patillo's "Amended Pleadings" (ECF No. 14) and Patillo's "Amended & Supplemental Pleadings" (ECF No. 16).

IV. The Court of Appeals erred in ruling that the trial court did not abuse its discretion, that the cautionary instruction to the jury was sufficient, and that the Defendant was not sufficiently prejudiced by the refusal to grant a mistrial when the Commonwealth asked a defense witness if the defense attorney instructed the witness to wear a multi-colored coat to court.

Petition for Appeal at 3, Patillo v. Commonwealth, No. 100268 (Va. Feb. 11, 2010) (first alteration in original). The Supreme Court of Virginia refused Patillo's Petition for Appeal. Patillo v. Commonwealth, No. 100268, at 1 (Va. July 1, 2010).

## B. State Habeas

Patillo then filed a petition for a writ of habeas corpus in the Circuit Court. In his Amended Petition for a Writ of Habeas Corpus, Patillo raised the following claims:

(A) Petitioner was denied effective assistance of counsel[4] when "counsel failed to make objections to numerous of the Commonwealth's Attorney's inflammatory and circumstantial evidence," to wit: "41 caliber bullets Exhibit #7, that was recovered by Detective Flores after an illegal search and seizure of the Cadillac."

(B) The police erred by conducting an illegal search and seizure of the Cadillac.

(C) Petitioner was denied effective assistance of counsel when counsel failed to object to the illegal search and seizure.

---

[4] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *U.S. Const. amend. VI.*

(D) "The prosecution failed to prove every element of the crime beyond a reasonable doubt with the *In re Winship* Standard."

(E) "The Richmond City Circuit Court erred in its convictions of the petitioner because such conviction was based upon a scintilla of evidence."

(F) "Petitioner's conviction rests entirely on the basis of insufficient and incompetent evidence in violation of the Due Process Clause[5] of the Fourteenth Amendment to the U.S. Constitution and the Constitution of Virginia." (Amended Claim (A)).

(G) Petitioner was denied effective assistance of counsel when counsel failed to call several witnesses who could have bolstered his alibi defense, in violation of petitioner's "Sixth and Fourteenth Amendment rights and rights secured under the Constitution of Virginia." (Amended Claim B).

(H) Petitioner was denied effective assistance of counsel when counsel . . . failed to call a witness [TaShelle Harrison] who would have testified that the prosecution's chief witness, Kimberly Patillo, admitted to her that she had not been truthful when she testified against petitioner. (Amended Claim C).

(I) "The prosecutor, in his arguments and commentary to the jury concerning the evidence at trial presented and misrepresented evidence in a manner that shifted the burden of proof in violation of the Fourteenth Amendment and Constitution of Virginia." (Amended Claim D).

(J) Petitioner was denied effective assistance of counsel when counsel failed to object to the "prosecutor's burden shifting tactics in violation of the Sixth and Fourteenth Amendments

---

[5] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1

and the Constitution of Virginia." (Amended Claims E).

(K) Petitioner was denied effective assistance of counsel when counsel failed to "vigorously cross-examine Kimberly Patillo in violation of [petitioner's] Sixth and Fourteenth Amendment rights and the Constitution of Virginia." Amended Claim (F)[.]

(L) Petitioner was denied effective assistance of counsel when counsel failed to "make a pretrial motion to have the indictment quashed for lack of probable cause" because the Commonwealth presented hearsay testimony to the grand jury. (Amended Claim G).

Patillo v. Clarke, No. CL11-2831, at 2-4 (Va. Cir. Ct. Sept. 6, 2011) (third and fourth alterations in original). The Circuit Court denied and dismissed the petition for a writ of habeas corpus. Id. at 16.[6]

Thereafter, Patillo pursued an appeal to the Supreme Court of Virginia. In his Petition for Appeal, Patillo listed the following Assignment of Errors:

1. The court below abused its discretion and erred when it failed to consider and or grant Mr. Patillo's "Motion for an Enlargement of Time" in which to respond to the "Motion to Dismiss" filed by the respondent.

2. The court below abused its discretion and erred when it issued a final order dismissing Mr. Patillo's

---

[6] The Circuit Court found, inter alia, that Patillo defaulted Claims (B), (D), (E), (F), and (I) because he could have, but failed to, raise these claims on direct appeal. Patillo, No. CL11-2831, at 4-5 (citing Jackson v. Warden of Sussex I State Prison, 627 S.E.2d 776, 782 (Va. 2006); Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974)).

Habeas Petition without having first considered his rebuttal to Respondent's Motion to Dismiss.

3.   The court below abused its discretion and erred when it dismissed Claim (G) because Petitioner has failed to proffer by affidavit the substance of the witnesses' testimony before allowing Mr. Patillo a fair opportunity to present the very affidavits he was in the process of obtaining.

4.   The court below abused its discretion and erred when it deemed Claims (B), (D), (E), (F), and (I) procedurally defaulted without first providing Mr. Patillo a fair opportunity to show both cause and prejudice for the alleged default.

5.   The court below abused its discretion and erred when it merely copied, virtually verbatim, opposing counsel's proposed order dismissing Mr. Patillo's habeas petition (an order drafted before Mr. Patillo's Rebuttal was filed) before having giving consideration to the Response to the Motion to Dismiss.

6.   The court below abused its discretion and erred when it dismissed Mr. Patillo's claims of ineffective assistance of counsel without having first allowed him to present his . . . evidence supporting both cause and prejudice.

Petition for Appeal at 3-4, _Patillo v. Clarke_, No. 111786 (Va. filed Oct. 11, 2011) (spelling, punctuation, capitalization corrected).   The Supreme Court of Virginia refused Patillo's Petition for Appeal.   _Patillo v. Clarke_, No. 111786 (Va. Mar. 27, 2012).

## II. EXHAUSTION AND PROCEDURAL DEFAULT

The exhaustion requirement "'is rooted in considerations of federal-state comity,'" and in the Congressional determination reflected in the federal habeas statutes "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92 & n. 10 (1973)). The purpose of the exhaustion requirement is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before he can apply for federal habeas relief. See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999). For its part Congress has declared that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "'opportunity'" to address the constitutional claims advanced on federal habeas. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)) (additional internal quotation

marks omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. (quoting Duncan, 513 U.S. at 365–66). Fair presentation demands that a petitioner must present "'both the operative facts and the controlling legal principles' associated with each claim" to the state courts. Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994, 995 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims

10

when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. See Harris v. Reed, 489 U.S. 255, 262 (1989).

## A. Claims Defaulted By Patillo's Failure To Raise Them On Direct Appeal

On state habeas, the Virginia courts refused to review the substance of Claims 1, 4, and 8 because Patillo could have, but failed to raise these claims on direct appeal to the Supreme Court of Virginia. Patillo v. Clarke, No. CL11-2831, at 4-5 (Va. Cir. Ct. Sept. 6, 2011) (citing Jackson v. Warden of Sussex I State Prison, 627 S.E.2d 776, 782 (Va. 2006); Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974)).[7] Slayton constitutes an adequate and independent state procedural rule when so

_____

[7] Because the Supreme Court of Virginia summarily refused Patillo's petition for appeal, the Court presumes that the Supreme Court of Virginia refused the claims for the reasons stated by the Circuit Court. See White v. Johnson, No. 2:05cv365, 2006 WL 2520113, at *4 (E.D. Va. Aug. 25, 2006) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

applied.  See Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997).  Thus, Patillo procedurally defaulted Claims 1, 4, and 8. To the extent that Patillo asserts that ineffective assistance of counsel constitutes cause to excuse his default of Claims 4 and 8, that contention lacks merit for the reasons set forth infra Part IV.B.3.  Accordingly, Claims 1, 4, and 8 will be dismissed.

**B.   Claims Raised On State Habeas**

Clarke concedes that Patillo presented to the Circuit Court, on habeas, the claims of ineffective assistance of counsel alleged in Claims 2, 3, 5, 6, and 7.  (Br. Supp. Mot. Dismiss ¶ 13.)  However, Clarke asserts that Patillo "failed to include these same claims in his assignments of error in his petition for appeal of that decision to the Supreme Court of Virginia" as required by Supreme Court of Virginia Rule 5:17(c) (Id. (citations omitted).)   Thus, says Clarke, Patillo has failed to satisfy the exhaustion requirement for these claims. Respondent further contends that, if Patillo now attempted to present these claims to the Supreme Court of Virginia, that court would find these claims procedurally barred.  As explained below, Clarke has not shown that Patillo has defaulted Claims 2, 3, 5, 6, and 7 by some deficiency in his assignments of error.

Supreme Court of Virginia Rule 5:17(c) provides, in pertinent part:

(1) *Assignments of Error.* Under a heading entitled "Assignments of Error," the petition shall list, clearly and concisely and without extraneous argument, the specific errors in the rulings below upon which the party intends to rely. An exact reference to the page(s) of the transcript, written statement of facts, or record where the alleged error has been preserved in the trial court or other tribunal from which the appeal is taken shall be included with each assignment of error.

> (i) Effect of Failure to Assign Error or Use Separate Heading. Only assignments of error assigned in the petition for appeal will be noticed by this Court. If the petition for appeal does not contain assignments of error, or if the assignments of error are not set forth under a separate heading as provided in subparagraph (c)(1) of this Rule, the petition shall be dismissed.
>
> . . . .
>
> (iii) Insufficient Assignments of Error. An assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. If the assignments of error are insufficient, the petition for appeal shall be dismissed.

Va. Sup. Ct. R. 5:17(c) (West 2012).[8] The Fourth Circuit has expressed skepticism at "the proposition that a petitioner *exhausts* for federal habeas purposes only 'assigned' errors." Jones, 591 F.3d at 714 (observing that the "Commonwealth cites *no* authority" supporting such a proposition). Moreover, Clarke provides no legal support for his assertion that Patillo's

---

[8] The Supreme Court of Virginia's rejection of Patillo's Petition for Appeal fails to suggest that it found his Assignment of Errors to have been deficient.

13

assignments of error were insufficient to fairly present his ineffective assistance of counsel claims to the Supreme Court of Virginia.[9] See id. at 714-15 (rejecting Virginia's assertion that petitioner's assignment of error failed to fairly present his federal constitutional claim). Nor do the briefs adequately address the argument. Given this lack of adequate briefing and the apparent lack of merit of the underlying claims, the Court will simply address the ineffective assistance of counsel claims on the merits. See Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999) (citing Hardiman v. Reynolds, 971 F.2d 500, 503 (10th Cir. 1992)).

### III.  APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS REVEW

To obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing

---

[9] Clarke cites one case for the distinct proposition that the Supreme Court of Virginia's refusal to review a Petition for Appeal that contains **no** assignment of errors constitutes an adequate and independent procedural bar. (Br. Supp. Mot. Dismiss ¶ 13 (citing Majette v. Johnson, No. Civ.A. 2:05CV114, 2006 WL 287151 (E.D. Va. Feb. 6, 2006)).

evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## IV. ANALYSIS

### A. Summary Of The Evidence

The Court of Appeals of Virginia aptly summarized the evidence of Patillo's guilt as follows:

> Jason Patillo (appellant) was convicted by a jury of the first-degree murder of his cousin, James Patillo (James), and of use of a firearm in the commission of murder.
> . . . .

[T]he evidence shows that Alphonso Patillo (Alphonso)—also appellant's cousin—was shot and killed in the City of Hopewell on February 4, 2008, at approximately 1:00 a.m. Appellant learned of the shooting shortly after it happened, and he drove to Hopewell in a Cadillac owned by his girlfriend. Appellant was only briefly in Hopewell, as family members advised him to return to the City of Richmond where the family was assembling.

Prior to 4:00 a.m. on February 4, 2008, members of the Patillo family, including appellant, had gathered at a residence on Ford Avenue in Richmond [(the home of Diane White)]. There, a family member mentioned that James had been seen earlier in the evening talking to the person suspected of murdering Alphonso.[10] Appellant was very upset when he heard this, and said that he wanted to talk to James. James eventually arrived at the Ford Avenue residence at about 8:00 a.m. that morning.

Kimberly Patillo, another cousin of appellant, had a conversation with appellant at the Ford Avenue residence shortly before James's murder. She stated that appellant wore a "colorful" coat[11] and had a handgun in the waistband of his pants—and also said that appellant snorted cocaine, stating to her that he "needed it." According to Kimberly Patillo, appellant also said, "[H]e got to go, somebody got to go, somebody has to pay . . . for what they did to Fonz [Alphonso]." Appellant then walked outside and talked to James. Moments later, Kimberly Patillo heard gunshots.

James was fatally shot three times outside the Ford Avenue residence at approximately 8:30 a.m. on the same morning of Alphonso's murder and of the family meeting at the Ford Avenue residence. No eyewitnesses could specifically identify the shooter,

---

[10] It was suggested, therefore, that the victim had been involved in the shooting of Alphonso. However, Hopewell police later determined that James was not involved in that murder.

[11] In addition to Kimberly Patillo, several other witnesses at trial—Ronald White and Charles Patillo, relatives of appellant, and Chris Tuck, a friend of appellant—testified that appellant was known to wear a colorful coat.

but at least two eyewitnesses described the shooter as wearing a colorful coat with fur around the hood. Bullets found at the scene of the shooting and recovered from James's body were .41-caliber, an unusual bullet design.[12]

The Cadillac belonging to appellant's girlfriend was at the scene of James's death, and some of appellant's belongings were found inside the vehicle. In addition, a box of .41-caliber bullets was found in the Cadillac, and appellant's fingerprint was found on a bullet in the box. Appellant had been seen with a .41-caliber firearm about a week before James's murder.

Appellant argued at trial that the circumstantial evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that he was the person who shot and killed James.[13] However, the jury convicted appellant on both the first-degree murder charge and the use of a firearm in the commission of murder charge . . . .

Patillo v. Commonwealth, No. 2952-08-2, 2010 WL 87536, at *1-2

(Va. Ct. App. Jan. 12, 2010) (alterations, other than first two

alterations, in original) (second omission in original)

(footnote numbers altered).

---

[12] At trial, the Commonwealth's forensic analyst testified that the Department of Forensic Science had examined only twenty-nine .41-caliber magnum revolvers since 1995—out of a total sample size of over 20,000 specimens examined by the Department during that same period.

[13] Angela Patillo, appellant's sister, testified that appellant was at their sister Rebecca's apartment moments before James's murder. She also testified that, a few days before the murder, she had witnessed the victim, James, and another family member, Charles Patillo (James's brother), have a heated argument in which they were "telling each other they were going to kill each other."

### B. Alleged Ineffective Assistance Of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

### 1. Failure To Call Witnesses To Suggest An Alibi

In Claim 2, Patillo faults counsel for not calling as witnesses Christy Patillo, Annie Patillo, Kelly Edwards, and Brenda Liamore. Patillo alleges that these individuals would

have "testified that they did not see petitioner at the place where the crime occurred after 5:00 a.m." (Mem. Supp. § 2254 Pet. 5-6 (punctuation corrected).) In rejecting this claim, the Circuit Court stated:

> The Court finds petitioner has failed to proffer by affidavits the substance of these witnesses's [sic] testimony. His failure to do so is fatal to his claim. Muhammad v. Warden, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007) (dismissing ineffective assistance of counsel claim where petitioner alleged that counsel should have obtained an expert but failed to include affidavit detailing the expected testimony).
> The Court further finds, the record, including the affidavit of counsel, demonstrates counsel attempted to contact all the witnesses petitioner asked him to contact and called all witnesses at trial whose testimony would have established an alibi.

Patillo v. Clarke, No. CL11-2831, at 11 (Va. Cir. Ct. Sept. 6, 2011).

Where a petitioner faults counsel for not calling a witness, the petitioner must provide "concrete evidence of what [the witness] would have testified to in exculpation," so that the reviewing court can adequately assess the significance of the decision not to call the witness. United States v. Terry, 366 F.3d 312, 316 (4th Cir. 2004); see Bassette v. Thompson, 915 F.2d 932, 941 (4th Cir. 1990) (dismissing claims where petitioner failed to make an adequate proffer of testimony of omitted witnesses). Patillo's "conclusory allegations [about the existence of favorable testimony] are insufficient to establish the requisite prejudice under Strickland." Terry, 366

F.3d at 316. Given that circumstance and the abundant evidence of Patillo's guilt, the Virginia courts acted reasonably in rejecting this aspect of Claim 2.[14] See 28 U.S.C. § 2254(d); Nelson v. Johnson, No. 1:10cv736, 2011 WL 1790129, at *4-5 (E.D. Va. May 5, 2011). Accordingly, Claim 2 will be dismissed.[15]

### 2. Failure To Challenge Kimberly Patillo's Testimony

In Claim 3, Patillo faults counsel for not calling LaShelle Harrison as a witness. Patillo contends that Harrison "would have testified that Kimberly Patillo admitted to her, while out

---

[14] During the pendency of this § 2254 Petition, Patillo submitted an affidavit from Christy Patillo. (Am. Pleadings Ex. 2.) Patillo, however, fails to explain why this new evidence would permit federal habeas relief. See Jackson v. Kelly, 650 F.3d 477, 492 (4th Cir. 2011) ("[W]hen a habeas petitioner's claim has been adjudicated on the merits in state court, a federal court is precluded from supplementing the record with facts adduced for the first time at a federal evidentiary hearing." (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011))). In any event, Christy Patillo's cursory testimony fails to demonstrate prejudice. Terry, 366 F.3d at 316. Christy Patillo simply swears, "Told William Linka [(Patillo's trial counsel)] I didn't see Jason Patillo inside or outside Diane's house after 8:00 a.m. talking to James Patillo." (Am. Pleadings Ex. 2.) Christy Patillo fails to indicate where she was located or that she even looked outside of Diane White's house between 8:00 a.m. and 8:30 a.m., when James Patillo was shot.

[15] Also in Claim 2, Patillo faults counsel for failing to call Jermaine Washington and Katrina McCray to testify that "they left Diane White's house at approximately 5:00 a.m., or just before, and dropped petitioner off at his sister's house." (Mem. Supp. § 2254 Pet. 6 (capitalization and punctuation corrected).) Counsel essentially elicited this testimony from Washington and McCray. (See, e.g., Nov. 20, 2008 Tr. 111, 113-14, 187). Thus, this aspect of Claim 2 lacks merit.

at a club, that she had not been truthful when she testified against Petitioner." (Mem. Supp. § 2254 Pet. 6-7.) The Circuit Court rejected this claim, in part, because Patillo failed to tender an affidavit from Harrison. <u>Patillo</u>, No. CL11-2831, at 12 (citing <u>Muhammad</u>, 646 S.E.2d at 195).[16] Moreover, the Circuit Court concluded that Patillo's nebulous allegations regarding Harrison's possible testimony failed to demonstrate prejudice:

> Several witnesses testified that petitioner often wore a colorful fur coat. As the Court of Appeals found in its opinion affirming petitioner's appeal, "two eyewitnesses described the shooter as wearing a colorful coat with fur around the hood." Distinctive bullets recovered from the petitioner's girlfriend's car-which was parked right next to the victim-were the same unusual type as the bullet found under the body. Petitioner's fingerprint was found on the box of bullets recovered from the car.

<u>Id.</u> at 12-13. Given the substantive evidence of Patillo's guilt, the Virginia courts reasonably rejected Claim 3 for failure to demonstrate prejudice. Accordingly, Claim 3 will be dismissed.

Similarly, in Claim 6, Patillo faults counsel for failing to vigorously cross-examine Kimberly Patillo. Before the

---

[16] In his federal habeas proceedings, Patillo submitted an affidavit from LaShelle Harrison, wherein she swears that, "Kimberly Patillo told me that she lied about seeing Jason Patillo at Diane's house after 8:00 a.m." (Am. Pleadings Ex. 3.) Patillo fails to demonstrate that the Court can consider this evidence in assessing his entitlement to federal habeas relief. <u>See</u> <u>Jackson</u>, 650 F.3d at 492 (citing <u>Cullen</u>, 131 S. Ct. at 1398-400). In any event, Patillo fails to demonstrate prejudice for the reasons set forth by the Circuit Court on the following page.

disposition of his state habeas petition, Patillo failed to identify any questions that counsel should have propounded that would likely lead to the impeachment of Kimberly Patillo's testimony. Id. at 14. Accordingly, the Virginia courts reasonably rejected Claim 6 because Patillo failed to demonstrate prejudice. See 28 U.S.C. § 2254(d).[17] Claim 6 will be dismissed.

### 3. Failure To Object To Allegedly Improper Argument

In Claim 5, Patillo contends that counsel failed to object to the prosecutor's closing argument that allegedly shifted the burden of proof to the defense. Specifically, Patillo complains the prosecutor

> intentionally misrepresented, from innuendo, from a picture of a gun that had nothing to do with the crime, but which an expert witness was used to talk about. In short, the prosecution, through sleight of hand word-play intentionally argued the jury to speculate on evidence that did not exist, and essentially require the petitioner to, in fact, prove that he was not the perpetrator. In essence the prosecution made the sly argument to the jury that, if Jason Patillo didn't do it, who did? Thus, you must find him guilty.

(Mem. Supp. § 2254 Pet. 7-8 (capitalization corrected).) Making reference to the holding by the Court of Appeals of Virginia,

---

[17] Patillo now has submitted a list of the questions that he suggests counsel should have asked of Kimberly Patillo. (Rebuttal Br. Motion Dismiss 19-21 (as paginated by the CM/ECF Docketing System).) However, Patillo fails to demonstrate that those questions would have yielded any significant impeachment testimony.

the Circuit Court noted: "[T]he prosecutor made no such inappropriate [burden shifting] closing argument. 'In closing argument, the prosecutor did not make a burden-shifting argument, and instead acknowledged that 'everybody agrees the burden i[s] on us [appellant] has no burden, he presumed innocent, all of those things.''" Patillo, No. CL11-2831, at 13 (last alteration in original). Rejecting this claim, the Circuit Court found that "counsel had no basis to object and petitioner's claim is without merit." Id. (citing Oken v. Corcoran, 220 F.3d 259, 269-70 (4th Cir. 2000) for the proposition that counsel was not ineffective for failing to object to prosecutor's closing argument given the wide latitude afforded to counsel on argument). The Court agrees with the Circuit Court's assessment and finds that Patillo's assertion that the prosecution improperly suggested Patillo bore the burden to prove his innocence lacks merit.

Additionally, Patillo suggests that the prosecution misrepresented that the photograph of the firearm presented was a photograph of the actual murder weapon. That simply is not borne out by the record. The prosecution clearly acknowledged that it did not possess the murder weapon.[18] Accordingly,

---

[18] The prosecutor stated, "Would it be helpful if we had a video? Of course. Or DNA of him, if we had the murder weapon? Of course. But the evidence is he ran away with the murder

23

counsel reasonably eschewed the objections that Patillo urges here. Claim 5 will be dismissed.

In Claim 8, Patillo contends that the prosecution acted improperly by repeatedly arguing "that petitioner is the person that shot James Patillo, and that its witness Kimberly Patillo, clearly established that." (Mem. Supp. § 2254 Pet. 10-11.)[19] Contrary to Patillo's assertion, the prosecution acted properly by arguing that it was reasonable to infer from Kimberly Patillo's testimony that Patillo had shot James Patillo.

Patillo further complains that the prosecution improperly argued that Patillo possessed a "41 caliber revolver, even though he knew that not one iota of evidence was presented to support that." (Id. at 11.) Ample evidence supported this argument by the prosecution, including Kimberly Patillo's testimony that immediately before the murder she observed a revolver in Patillo's pants. Additionally, testimony by Kimberly Patillo and the prosecution's firearms expert showed that the weapon that she observed on Patillo was a Dan Wesson .41-caliber revolver. Finally, police recovered a box of .41-caliber bullets from the car Patillo occupied on the night of

_____

weapon, he ran away with the coat, so of course we don't have those things." (Nov. 21, 2008 Tr. 160.)

[19] The Court liberally reads Patillo's submissions to fault counsel for failing to challenge the prosecutor's comments mentioned in Claim 8.

the murder.   One of the bullets had Patillo's fingerprints on
it.   In sum, ample evidence supported the prosecution's argument
that Patillo possessed a .41-caliber handgun.   Thus, counsel
acted reasonably by declining to make the objection that Patillo
urges here.   This alleged deficiency of counsel fails to
constitute cause to excuse Patillo's default of Claim 8.

### 4.   Failure To Challenge The Indictment

In Claim 7, Patillo complains that counsel acted
deficiently for failing to make a pretrial motion to quash the
indictment for lack of probable cause.   Patillo complains that
"the indictment issued by the grand jury was premised entirely
on hearsay testimony . . . ."   (Id. at 10 (spelling corrected).)
The Circuit Court correctly found that counsel had no basis to
file a motion to quash the indictment because hearsay testimony
is admissible before a grand jury.   Patillo, No. CL11-2831, at
15 (citing Vihko v. Commonwealth, 393 S.E.2d 413, 416 (Va. Ct.
App. 1990)).   Accordingly, Claim 7 lacks merit and will be
dismissed.

## V. CONCLUSION

The Motion to Dismiss (ECF No. 5) will be granted. The § 2254 Petition (ECF No. 1) will be denied. The action will be dismissed. A certificate of appealability will be denied.[20]

The Clerk is directed to send a copy of the Memorandum Opinion to Patillo and counsel for Respondent.

An appropriate Order shall issue.

/s/ REP
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 25, 2013

---

[20] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Patillo fails to satisfy this standard.